UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOHN THOMAS ENTLER,

                Plaintiff,

        v.

BRIDGETTE K. BOLINGER; KERRY LAWRENCE,

              Defendant.

No. CV-05-5122-FVS

SUMMARY JUDGMENT ORDER

    **THIS MATTER** comes before the Court on the Defendants' Motion For Summary Judgment, Ct. Rec. 30.  The Plaintiff is proceeding pro se.  The Defendants are represented by Mary C. McLachlan.

    The Plaintiff has failed to raise a genuine issue of material fact concerning Mr. Lawrence's motivation for transferring him from the Airway Heights Corrections Center to the Washington State Penitentiary.  The Defendants' motion for summary judgment will therefore be granted in part and Lawrence dismissed from this action.  However, the evidence submitted by the Plaintiff demonstrates the existence of a triable issue of fact concerning Bolinger's motivation for issuing a minor infraction on September 12 and confiscating his property on December 24, 2003.  The Defendants' motion must therefore be denied in part and the matter proceed to trial on the basis of these two incidents.

SUMMARY JUDGMENT ORDER- 1

**BACKGROUND**

This is a Section 1983 action brought by John Thomas Entler, a prisoner in the custody of Washington's Department of Corrections ("DOC"), against a Correctional Officer ("CO"), Bridgette K. Bolinger, and her Correctional Unit Supervisor ("CUS"), Kerry Lawrence.  In 2004, the Plaintiff was housed on K-Unit at the Airway Heights Corrections Center ("AHCC").  Declaration of Tiffany Spencer, January 5, 2007 ("Spencer Decl.") Att. A.  Lawrence was responsible for managing K-Unit and Bolinger worked there.  Declaration of Bridgette Bolinger, January 3, 2007 ("Bolinger Decl.") ¶ 2; Declaration of Kerry Lawrence, January 3, 2007 ("Lawrence Decl.") ¶ 1.

August 9 Infraction

On the morning of August 9, 2004, the Plaintiff assisted another inmate, Willie Davis, in preparing a grievance against Bolinger. Affidavit of John Thomas Entler, March 17, 2005 ("Entler Aff.") ¶ 1; Affidavit of Willie Davis, August 25, 2004 ("Davis Aff.").  It is undisputed that Bolinger issued a minor infraction to the Plaintiff later that day.

The parties have submitted conflicting evidence concerning the sequence of events that led up to the issuance of the minor infraction.  Bolinger has stated that she issued a general infraction to the Plaintiff on August 9 because he had locked his key in his cell.  Bolinger Decl. ¶¶ 4-5, 9.  The Plaintiff denies locking his key in his cell.  Deposition of John Thomas Entler, December 7, 2006 ("Entler Dep.") at 12.  He testifies that, on the afternoon of August 9, Bolinger asked him why he was helping other inmates file grievances

SUMMARY JUDGMENT ORDER- 2

and warned him that the staff against whom such grievances were filed
would "take it personally." Entler Aff. ¶ 3. According to the
Plaintiff, Bolinger approached him again on August 14 and urged him to
remember their conversation of August 9. *Id*. ¶ 4. On August 17,
Bolinger served the Plaintiff with a minor infraction. *Id*. ¶ 8.

On August 18, the Plaintiff appeared before Sergeant Lucas for a
hearing on the infraction. Lucas found the Plaintiff guilty of the
minor infraction and imposed 20 hours of extra duty as a sanction.
Declaration of Mary C. McLachlan, January 8, 2007 ("McLachlan Decl.")
Att. D. The Plaintiff signed an Extra Duty Sanctions Form, advising
him, "You are also required to complete tasks when requested by Staff.
Failure to do extra duty when directed by Staff will result in Serious
Infraction WAC # 658." Declaration of Toni Wimberly, January 5, 2007
("Wimberly Decl."), Att. I.

<u>September 12 Infraction</u>

On September 9, the Plaintiff filed an anti-harassment petition
against Bolinger in Spokane County District Court. Entler Aff. ¶ 11.
The parties agree that Bolinger issued a serious infraction to the
Plaintiff on September 12. Bolinger Decl. ¶ 8; Entler Decl. Att. H.

The sequence of events leading up to this infraction is, again,
disputed. Bolinger declares that she ordered the Plaintiff to perform
extra duty on September 12. She issued the infraction because the
Plaintiff refused to comply with this order. Bolinger Decl. ¶ 7. The
Plaintiff declares that Bolinger called him to the officers' station
on September 12 and asked him if he "wanted" to do some extra duty.
The Plaintiff indicated that he would prefer not to do any extra duty

SUMMARY JUDGMENT ORDER- 3

at that particular time and Bolinger replied, "OK."  Entler Decl. ¶

12.

### December 5, 2004 "Cell In" Order

On December 5, 2004, the Plaintiff and another inmate, Thomas

Asbach, had a conversation outside Asbach's cell just after lunch.

Affidavit of Thomas W. Asbach, January 12, 2005 ("Asbach Aff. 1") at

1.  Asbach offered the Plaintiff an apple from his lunch.  *Id*.

Bolinger called the Plaintiff and Asbach to the officer's station and

confronted them about passing items between them.  Following an

exchange, Bolinger confined both inmates to their cells.  Entler Aff.

¶ 18; Bolinger Decl. ¶ 9.

The parties' accounts of this incident differ significantly.

Bolinger declares that she confronted the Plaintiff and Asbach because

she genuinely suspected that they were passing objects between them.

She ordered them to "cell in" after they became rude and

argumentative.  Bolinger Decl. ¶ 9.  The Plaintiff testifies that

Bolinger accused him of passing illegal contraband without grounds and

directed all of her accusations to the Plaintiff.  The Plaintiff

further indicates that both inmates behaved appropriately during the

conversation, and Bolinger confined Asbach to his cell without

directing a word to him.  Entler Aff. ¶ 18; Asbach Aff. at 1-2.

### December 24 Cell Search/Confiscation of Photos

On November 16, Risa Klemme, the AHCC official charged with

reviewing confiscated materials, received an album of photos belonging

to the Plaintiff.  She was asked to review the contents of the album

for compliance with DOC's obscenity policy.  Declaration of Risa

SUMMARY JUDGMENT ORDER- 4

Klemme, February 3, 2005 ("Klemme Decl.") ¶ 2,4. Upon review, Klemme determined that six of the photos did not comply with the policy and confiscated them. *Id*. at ¶ 5. On November 30, Klemme advised the Plaintiff by letter that the six photos had been confiscated but the rest would be returned. *Id*. at 6.

On December 6, 2004, the Plaintiff filed a staff conduct grievance against Bolinger based on the "cell in" incident described above. Declaration of Devon Schrum ("Schrum Decl."), January 3, 2007, Att. A. On December 24, Bolinger ordered a search of the Plaintiff's cell. Lawrence Decl. Att. C; Bolinger Decl. ¶ 11. In the course of the search, Correctional Officers Tidler and Sprecher found and confiscated a "photo album w/ cut out photos." Entler Aff. Att. N.

The Plaintiff's affidavit implies that the photos confiscated on December 24 were the same photos Klemme returned to him after her review. After the album was found, Bolinger became involved. She read Klemme's letter of November 30, but nevertheless authorized the confiscation. Entler Aff. ¶ 21.

January 20, 2005 Infraction

In January of 2005, the Plaintiff filed at least three grievances against Bolinger based on her alleged failure to perform security checks. Schrum Decl. Att. B-D.

On January 19, 2005, the Plaintiff sent a "kite" to Lawrence, informing him that he would not perform any extra duty if ordered to do so by Bolinger, Ward, or Correctional Officer Jackson. Lawrence responded and informed the Plaintiff that any refusal to complete extra duty would result in an infraction. Entler Dep. at 63-64. On

SUMMARY JUDGMENT ORDER- 5

January 20, 2005, Bolinger ordered the Plaintiff to perform extra duty.  He refused and received an infraction.  Wimberly Decl. Att. E.

Transfer

A Facility Plan Change Review was held on February 2, 2005. Classification Counselors Rita Brazington and Rebecca Isherwood recommended that the Plaintiff be transferred to a medium security facility.  Wimberly Decl. Att. H.  Lawrence concurred with their recommendations and the Plaintiff was transferred to the Washington State Penitentiary in Walla Walla.

Procedural History

The Plaintiff instituted the present action on December 29, 2005. He alleges that the Defendants retaliated against him for exercising his Constitutional right to free speech.  The Defendants moved for summary judgment on January 8, 2007.  The Court requested supplemental briefing on September 24, 2007.  The parties timely completed the supplemental briefing and the Defendants' motion for summary judgment now before the Court.

**DISCUSSION**

**I.    SUBJECT MATTER JURISDICTION**

The Plaintiff alleges a federal cause of action arising under 42 U.S.C. § 1983.  The Court has jurisdiction to hear this claim pursuant to 28 U.S.C. § 1331.

**II.   SUMMARY JUDGMENT STANDARD**

A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex*

SUMMARY JUDGMENT ORDER- 6

*Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265, 273-74 (1986).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth."  *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Initially, the party moving for summary judgment bears the burden of showing that there are no issues of material fact for trial. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 106 S. Ct. at 274. Where the moving party does not bear the burden of proof at trial, it may satisfy this burden by pointing out that there is insufficient evidence to support the claims of the nonmoving party.  *Id.*

If the moving party satisfies its burden, the burden then shifts to the nonmoving party to show that there is an issue of material fact for trial.  Fed. R. Civ. P. 56(e), *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; 91 L. Ed. 2d at 274.  There is no issue for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202, 212 (1986).

**III.  RETALIATION**

Although the legal rights of a prisoner are more limited in scope than those enjoyed by the general population, a prisoner retains those First Amendment rights that are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Shaw v. Murphy*, 532 U.S. 223, 229-229, 121 S. Ct. 1475, 1479, 149 L. Ed. 2d 420, 427 (2001).  A prisoner who

SUMMARY JUDGMENT ORDER- 7

experiences retaliation for exercising his or her First Amendment rights may seek recovery under Section 1983 if he or she proves five elements:

1) He or she was subjected to adverse action;

2) The adverse action was imposed because of certain conduct;

3) The conduct that gave rise to the adverse action is legally protected;

4) The adverse action chilled the prisoner's speech; and

5) The adverse action did not advance a legitimate penological goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).

**A.    Motivating Factor**

The Defendants argue that the Plaintiff has failed to submit any evidence that the adverse conduct at issue was motivated by retaliation. A prisoner may prove that an adverse action was motivated by retaliation through either direct or circumstantial evidence. *Hurd v. Garcia*, 454 F. Supp. 2d 1032, 1049 (S.D. Cal. 2006)(citing *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999)). While "timing can properly be considered as circumstantial evidence of retaliatory intent," timing alone is insufficient to create a genuine issue of material fact regarding retaliatory motive. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). An officer's statement that suggests the officer had an improper motivation may raise a genuine issue of material fact when combined with suspicious timing. *See Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2004)(holding that an officer's statement, "the last incident where [the plaintiff] acted as spokesperson was the last

SUMMARY JUDGMENT ORDER- 8

straw," created a genuine issue of material fact when combined with the suspicious timing of the action).

Each of the incidents on which the Plaintiff seeks to base his retaliation claim is discussed in turn below.

### 1.    August 9 infraction

The Defendants argue that Bolinger issued the August 9 infraction because the Defendant had locked his key in his cell, rather than out of any retaliatory motive.  The Plaintiff denies having locked his key in his cell.  He has also submitted evidence that suggests Bolinger knew that the Plaintiff was helping Davis prepare a grievance against her, Davis Aff.  The Plaintiff has stated that Bolinger warned him against assisting other inmates with their grievances.  Entler Aff. ¶¶ 3-4.  Bolinger issued the general infraction shortly after she allegedly issued these warnings.  While Bolinger denies these allegations, it is not for the Court to make credibility determination.  Following *Bruce*, a reasonable jury could conclude from the evidence presented by Plaintiff that Bolinger's motivation for issuing the August 9 infraction was retaliatory.  The Plaintiff has thus raised a genuine issue of material fact concerning the August 9 infraction and may rely upon this incident in pursuing his retaliation claim.

### 2.    September 12 Infraction

The Defendants argue that the Plaintiff received an infraction on September 12 because he disobeyed Bolinger's order to perform extra duty.  The Court agrees that the Plaintiff has submitted insufficient evidence to persuade a reasonable jury that Bolinger infracted him for

retaliatory reasons.  It is true, as the Plaintiff argues, that he received the September 12 infraction a mere 3 days after filing an anti-harassment petition against Bolinger.  However, timing alone is insufficient to create a genuine issue of material fact regarding retaliatory motive.  *Pratt,* 65 F.3d at 808.

Moreover, any factual issued created by the Plaintiff's testimony concerning his conversation with Bolinger is immaterial.  The Plaintiff has submitted evidence in the form of his own affidavit that indicates that Bolinger "asked" the Plaintiff if he "wanted to do some extra duty," rather than ordering him to do so.  Entler Aff. ¶ 12. The Plaintiff further alleges that Bolinger "said ok" when he indicated that he would prefer not to perform his extra duty.  *Id*. This testimony arguably raises an issue of fact concerning the precise words that he exchanged with Bolinger on September 12.  However, even if Bolinger did phrase her request as a question, this fact would not negate the Defendants' argument.  It is not uncommon to phrase an order as a question.  The facts demonstrate that the Plaintiff refused to perform extra duty when asked to do so by an individual whom he is required to obey.  The Plaintiff has failed to raise a genuine issue of material fact regarding Bolinger's motivation for the September 12 infraction.  He thus may not rely upon this incident in pursuing his retaliation claim.

### 3.  December 5 cell-in order

The Defendants argue that Bolinger ordered the Plaintiff and Asbach to "cell in" in December of 2004 because they had become loud and disruptive.  While the Plaintiff has presented a contrary version

SUMMARY JUDGMENT ORDER- 10

of the facts surrounding this incident, he has not responded to the Defendant's legal argument.  In view of this failure, the Court finds that the Plaintiff has failed to raise a genuine issue of material fact regarding Bolinger's motivation for the December 5 cell-on order. He thus may not rely upon this incident in pursuing his retaliation claim.

**4.    December 24 Cell Search/Confiscation of Nude Photos**

As evidence that Bolinger's seizure of the Plaintiff's photo album was retaliatory, the Plaintiff relies upon the allegation that he had previously received permission from Klemme to have the photographs.  Bolinger, he alleges, read Klemme's letter prior to the search of his cell and the seizure of the photos.  The Defendants argue that Klemme did not authorize the Plaintiff to possess the photos until four days after the cell search.

The Court finds that the Plaintiff has raised a genuine issue of material fact concerning the motivation for the seizure of the album. Klemme's declaration indicates that she authorized the Plaintiff to keep the album in his cell at the end of November, 2004.  Klemme Decl. ¶ 6.  The cell search did not occur until December 24, 2004. Furthermore, the Plaintiff has testified that Bolinger read Klemme's letter prior to seizing the photos.  Entler Aff. ¶ 21.  Standing alone, this alleged fact might not be sufficient to raise a genuine issue of material fact concerning Bolinger's motivation for the seizure.  However, in the context of the Plaintiff's prior interactions with and complaints about Bolinger, a reasonable jury could find the seizure of the photos to be an act of retaliation.

SUMMARY JUDGMENT ORDER- 11

Consequently, the Plaintiff may introduce evidence concerning the seizure of his nude photographs as proof of his retaliation claim.

**5.    January 20 infraction**

The Defendants argues that the motivation for the January 20 infraction was the Plaintiff's refusal to perform extra duty.  The Plaintiff has failed to raise a genuine issue of material fact concerning the motive behind the January 20 infraction.  Although the Plaintiff is correct that the timing of this infraction is arguably suspicious, timing alone is insufficient to raise a genuine issue of material fact.  *Pratt*, 65 F.3d at 802.

The other fact relied upon by the Plaintiff, the fact that Bolinger ordered him to perform extra duty with full knowledge that he would refuse, is no more persuasive.  The Defendants have introduced evidence that, when an inmate is required to perform extra duty as a sanction, any Correctional Officer may order the inmate to perform the duty.  Declaration of Mike Klemke, October 17, 2007 ("Klemke Decl.") ¶ 11.  Even assuming that Bolinger was aware of the Plaintiff's communication to Lawrence, she would presumably also be aware of Lawrence's response to the Plaintiff.  The evidence before the Court thus indicates that, in ordering the Plaintiff to perform his extra duty, Bolinger was performing one of her duties as a CO.  The Plaintiff's evidence would not persuade a reasonable jury that Bolinger acted with a retaliatory motive in issuing the January 20 infraction.  The Plaintiff therefore may not rely upon this incident in pursuing is retaliation claim.

**6.    Transfer**

SUMMARY JUDGMENT ORDER- 12

The Defendants argue that Lawrence's decision to transfer the Plaintiff was based on his apparently "irresolvable conflict with CO Bolinger" rather than any retaliatory motive.  The Court agrees that the evidence before it is insufficient to enable a reasonable jury to find that the Plaintiff's transfer was retaliatory.  It is true that the Plaintiff has introduced evidence that Lawrence threatened to transfer him if he continued to file grievances against Bolinger. Entler Aff. ¶ 27; Asbach Aff. at 2.  Even assuming, however, that Lawrence did make this threat, the record shows that the Plaintiff had received numerous infractions and had filed numerous grievances against Bolinger.  The Plaintiff's other allegations suggest that relations between himself and Bolinger had become so problematic that a transfer was the only solution.  The Plaintiff's retaliation claim against Lawrence will therefore be dismissed.

### B.    Protected Conduct

A prison regulation that impinges on an inmate's constitutional rights is valid as long as it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261, 96 L. Ed. 2d 64, 79 (1987).  Communications between prisoners that contain legal advice or assistance enjoy no greater or lesser First Amendment protection than other communications between prisoners. *Shaw*, 532 U.S. at 230, 121 S. Ct. at 1479-80, 149 L. Ed. 2d at 427-428.  All free speech challenges brought by prisoners are to be evaluated under the test articulated in *Turner*.  *Id.*

Citing *Shaw*, the Defendants argue that prisoners do not have a First Amendment right to assist each other in filing grievances.  The

Plaintiff's retaliation claim, however, rests not on an inmate's right to assist other inmates in filing grievances, but on the right to free speech and association enjoyed by society at large. *Shaw* did not hold that prisoners have no Constitutional right to assist each other in legal matters; it held that interferences with such communications are subject to analysis under *Turner*.

The Defendants further argue that Bolinger did not become aware that the Plaintiff had assisted Davis with his grievance until after the filing of the present lawsuit. This argument is contradicted by the testimony of both the Plaintiff and Davis. The Plaintiff testifies that Bolinger questioned him about why he was helping other inmates with their grievances. Davis testifies that Bolinger observed the Plaintiff assisting him on numerous occasions. The Plaintiff has thus raised a genuine issue of material fact as to whether Bolinger knew that he was helping Davis prepare a grievance.

## C.  Chilling Effect

In order to prove that an adverse action had a chilling effect upon a prisoner, he or she must show that the adverse action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 562 (quoting *Mendocino*, 192 F.3d at 1300). As the Ninth Circuit has explained,

> Because it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in protected activity, a plaintiff does not have to demonstrate that his speech was actually inhibited or suppressed.

*Id*. at 569 (internal quotation marks and citation omitted).

The Defendants argue that the Plaintiff's retaliation claim must

SUMMARY JUDGMENT ORDER- 14

fail because he has not demonstrated that his speech was chilled or that he was otherwise harmed.  As the caselaw cited above illustrates, however, the Plaintiff need not demonstrate that he was deterred from further acts of speech.  The Plaintiff has submitted evidence that, as a result of Bolinger's allegedly retaliatory conduct, he was required to perform 20 hours of extra duty and his property was confiscated.  A reasonable jury could find that the consequences would chill or silence a prisoner of ordinary firmness from speaking in the future. The Plaintiff has thus raised a genuine issue of material fact as to whether the conduct at issue chilled his speech.

    D.  **Legitimate Penological Interest**

    The Plaintiff bears the burden of proving that the allegedly retaliatory action served no legitimate penological purpose.  *Bruce*, 351 F.3d at 1289 (citing *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)).  Accordingly, when the Government has submitted evidence of a legitimate penological purpose, the plaintiff must present evidence of retaliatory motive in order to avoid dismissal or summary judgment. *See Pratt,* 65 F.3d at 808-10 (holding plaintiff failed to demonstrate a likelihood of success on the merits where he failed to submit any evidence contradicting the defendants' evidence of legitimate correctional purposes); *Davis v. Valdes*, 462 F. Supp. 2d 1084, 1096 (C.D. Cal. 2006)(granting summary judgment where the plaintiff failed to rebut the defendants' testimony concerning legitimate penological purpose with any evidence other than his own "bare statements"); *Hurd v. Garcia*, 454 F. Supp. 1032, 1050 (S.D. Cal. 2006)(granting summary judgment where the plaintiff "fail[ed] to contradict the evidence in

the record that Plaintiff was transferred to Facility C to protect him from inmate assault").

The district court should "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt*, 65 F.3d at 807 (internal quotation marks and citation omitted.) The Ninth Circuit has long recognized that the preservation of institutional order and discipline constitutes a legitimate penological goal. *See Barnett v. Centoni*, 31 F.3d 813 (9th Cir. 1994). However, the Ninth Circuit has also held,

> prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right.

*Bruce*, 351 F.3d at 1289 (citing cases).

The Defendants argue that all of Bolinger's actions were justified by BOP's legitimate interest in preserving discipline and maintaining safety. The Court agrees that the preservation of discipline and safety constitutes a legitimate penological interest. It must now determine whether the evidence submitted by the Plaintiff creates an issue of material fact as to whether Bolinger "used the [disciplinary] procedure[s] to silence and punish" him. *Bruce*, 351 F.3d at 1289.

Caselaw from the Ninth Circuit concerning a prisoner plaintiff's burden to disprove the existence of a legitimate penological interest does not provide a clear answer to this question. The cases that have dismissed retaliation claims, *Pratt*, *Davis*, and *Hurd*, involved

plaintiffs who introduced little or no evidence to refute the defendants' evidence of a legitimate penological purpose.  In contrast, the plaintiff in *Bruce* submitted evidence that directly negated the defendants' allegedly legitimate reason for the adverse action at issue.  In *Bruce*, the Institutional Gang Investigator ("IGI") classified the plaintiff as a member of the Black Guerilla Family gang.  The plaintiff submitted evidence that the IGI's decision to validate him was based upon the same set of evidence that the IGI had previously determined was insufficient to support a validation of gang membership.  *Id*. at 1288.

The Court concludes that the present case is more analogous to *Bruce* than to *Pratt, Davis,* and *Hurd*.  Unlike the plaintiffs in *Pratt, Davis,* and *Hurd*, the Plaintiff has submitted evidence that calls the legitimate penological purposes of the Defendants into question.  Like the plaintiff in *Bruce*, he has "offered the suspect timing" of the adverse actions.  *Id.*  He has also "clearly asserted facts in his [affidavit] that, if true, show that [the August 9 infraction] was improperly motivated."  *Id*.  Specifically, the Plaintiff has presented evidence that, on August 9, Bolinger warned him that the Correctional Officers would "take it personally" if he continued to help other inmates with their grievances.  Entler Aff. ¶ 3.  He further alleges that Bolinger later cautioned him to remember this conversation.  *Id.* ¶ 4.

Finally, the Plaintiff has introduced evidence that negates the Defendant's presumed penological objective for confiscating the Plaintiff's photos.  The Plaintiff has introduced evidence that

SUMMARY JUDGMENT ORDER- 17

Bolinger confiscated certain photographs from the Plaintiff's cell after reading a letter that specifically authorized the Plaintiff to have them.  Entler Aff. ¶ 21; Klemme Decl. ¶ 6.  The Defendants have neither argued nor explained why, if the Plaintiff had obtained permission to possess the photos, confiscation was necessary to further a legitimate penological objective.

**IV.  QUALIFIED IMMUNITY**

Under the doctrine of qualified immunity, government officials are immune from civil liability for performing discretionary functions unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Morgan v. Morgensen*, 465 F.3d 1041, 1044 (9th Cir. 2006)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396, 410 (1982)).  Determining whether an official is entitled to qualified immunity entails a three step process.  First, the Court must determine whether the facts alleged by the Plaintiff "show the officer's conduct violated a constitutional right[.]"  *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156,  150 L. Ed. 2d 272, 281 (2001).  Second, the Court must determine whether the right in question was clearly established such that a reasonable officer would know his or her conduct was unlawful.  *Id.* at 202; *Morgan*, 465 F.3d at 1044.  Third, the Court must determine "whether a reasonable public official could have believed that the alleged conduct was lawful." *Hydrick v. Hunter*, 466 F.3d 676, 690 (9th Cir. 2006).

A right is clearly established when "the only reasonable conclusion from binding authority [is] that the disputed right

existed" or the relevant caselaw evinces such a clear trend that "recognition of the right is only a matter of time." *Hydrick*, 466 F.3d at 690 (internal quotation marks omitted).  The Plaintiff bears the burden of proving that the right was clearly established.  *DiRuzza v. County of Tehama*, 206 F.3d 1304, 1313 (9th Cir. 2000).

In 2004, it was clearly established that it is unconstitutional to punish a prisoner in retaliation for the exercise of a constitutional right.  *Rhodes*, 408 F.3d at 567 (citing *Pratt*, 65 F.3d at 806 n. 4).  It was also clearly established that prisoners have a First Amendment right to file grievances.  *Hydrick*, 466 F.3d at 692; *Hunter v. Heath*, 95 F. Supp. 2d 1140, 1154 (D. Or. 2000)(relying upon *Bradley v. Hall*, 64 F.3d 1276 (9th Cir. 1995 )).

In this case, the Plaintiff alleges that the Defendants retaliated against him for helping another inmate file a grievance and for filing grievances of his own.  The caselaw cited above demonstrates that it was clearly established by the late 1990s that it is unlawful to discipline an inmate in retaliation for filing a grievance.  Under *Rhodes*, it was also clearly established that retaliating against an inmate for associating or communicating with other inmates is unlawful.  Bolinger is therefore not entitled to qualified immunity.

**CONCLUSION**

The Plaintiff has failed to raise a genuine issue of material fact concerning Bolinger's motivation for issuing the September 12 infraction, the December 5 cell-in order, and the January 20 infraction.  The Plaintiff has also failed to submit evidence that

SUMMARY JUDGMENT ORDER- 19

would persuade a reasonable jury that Lawrence transferred him for retaliatory reasons.  Lawrence will accordingly be dismissed from this action.

However, the Plaintiff has submitted enough evidence to persuade a reasonable jury that Bolinger issued the August 9 infraction and confiscated the photo album in retaliation for the Plaintiff's First Amendment activities.  The First Amendment protects an inmate's right to speak and associate with other inmates.  It also protects an inmate's right to file grievances.

Bolinger is not entitled to qualified immunity because, in 2004, a reasonable officer would have known that it was unlawful to punish an inmate for helping another inmate draft a grievance.  A reasonable officer would also have known that it was unlawful to confiscate an inmate's property in retaliation for the inmate's grievances.  This matter will therefore proceed to trial on the basis of the August 9 infraction and the confiscation of the Plaintiff's photo album.

**IT IS HEREBY ORDERED:**

1. The Defendants' Motion for Summary Judgment, **Ct. Rec. 30**, is **GRANTED IN PART** and **DENIED IN PART.**

2. Kerry Lawrence is hereby **DISMISSED** from this cause of action.

3. The Plaintiff may not rely upon any of the following incidents in pursuing this litigation:

        a. The infraction issued on September 12, 2004;

        b. The cell-in order issued on December 5, 2004; or

        c. The infraction issued on January 20, 2005.

SUMMARY JUDGMENT ORDER- 20

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this  21st  day of March, 2008.

<pre>
              s/ Fred Van Sickle
              Fred Van Sickle
        United States District Judge
</pre>